Tomás Pérez Sales, peticionario, *v.* Corte de Distrito de Mayagüez, Hon. Francisco Navarro Ortiz, Juez, demandada.

Núm. 1081.—*Sometido:* Julio 13, 1936.  *Resuelto:* Julio 31, 1936.

*José Sabater*, abogado del peticionario; *Bolívar Pagán*, abogado del Sr. Olivencia, demandando en el pleito de nulidad en el cual se negó el *injunction* solicitado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Tomás Pérez Sales presentó en esta Corte Suprema una solicitud de *certiorari* alegando, en resumen, que en el caso civil seguido en la Corte de Distrito de Mayagüez por Enrique Olivencia contra el peticionario sobre filiación dicha corte dictó sentencia en junio 25, 1934, declarando la demanda sin lugar, sentencia que fué revocada en apelación por la de esta Corte Suprema de mayo 20, 1936, que declaró al demandante hijo natural reconocido de Pedro Pérez Sales, hermano del peticionario; que éste solicitó y obtuvo de esta Corte Suprema en término que se le permitiera radicar como radicó una moción de reconsideración de la sentencia de mayo 20, 1936; que no obstante haberse retenido el mandato con motivo de la moción, Enrique Olivencia radicó en la Corte de Distrito de Mayagüez un pleito contra El Pueblo de Puerto Rico sobre reivindicación de los bienes de la herencia de Pedro Pérez Sales, y basándose en que la sentencia que declaró a Enrique Olivencia hijo natural reconocido—la de esta Corte Suprema de mayo 20, 1936—era firme, las par-

tes celebraron una estipulación por virtud de la cual El Pueblo se allanó a la demanda y consintió en que se dictara sentencia en su contra, sentencia que se dictó en efecto en junio 29, 1936, librándose acto seguido mandamiento de lanzamiento contra el peticionario y su esposa, a quienes se arrestó, y mientras estaban arrestados el márshal de la corte de distrito se personó en la hacienda Mérida y se incautó de las llaves de la casa vivienda del peticionario, allanando la misma y despojándolo de su propiedad, ''que sigue siendo de su pertenencia mientras este Tribunal Supremo no resuelva la moción de reconsideración de sentencia y expida el mandato a la corte inferior.''

Sigue alegándose en la solicitud que a virtud de la violencia con que se llevaron a cabo esos procedimientos, el peticionario radicó en la Corte de Distrito de Mayagüez una demanda contra Enrique Olivencia y El Pueblo de Puerto Rico sobre nulidad de actuaciones, declaración de propiedad y posesión e *injunction,* alegando substancialmente que el peticionario había sido declarado único y universal heredero de Pedro Pérez Sales, su hermano; que por virtud de transacción con El Pueblo de Puerto Rico estaba en posesión como dueño desde marzo 4, 1933, de la hacienda Mérida, una de las fincas dejadas por su hermano, habiéndose adjudicado al Pueblo otras dos fincas; y que Olivencia prematuramente y antes de expedirse el mandato en el pleito de filiación radicó el de reivindicación en el que se dictó sin jurisdicción la sentencia por estipulación que se ejecutó inmediatamente lanzándose de su finca al peticionario. Terminó pidiendo que se dictara una orden de *injunction* preliminar para que se respetara al peticionario en la posesión de la finca en cuestión.

Y se alega además en la solicitud que el peticionario como auxiliar a su demanda de nulidad presentó una solicitud de *injunction* preliminar a fin de que se prohibiera a Olivencia que interviniera con el peticionario en la posesión de la finca,

solicitando que el *"injunction* preliminar estuviera vigente hasta que se resolviera la moción de reconsideración de sentencia que tiene presentada este peticionario a este Hon. Tribunal Supremo y se expidiera el mandato a la corte inferior, ofreciendo prestar fianza el peticionario para responder de los daños y perjuicios que pudiera causársele al demandado Enrique Olivencia con dicha orden de *injunction* preliminar; pero la corte inferior por su Juez el Hon. Francisco Navarro Ortiz, se negó a conceder la orden de *injunction* preliminar, dictando para ello la siguiente orden: 'Esta corte ha considerado y estudiado la solicitud de *injunction* preliminar radicada en el presente pleito. Se pide un *injunction* preliminar para suspender la ejecución de sentencia en el caso núm. 18,837 de Enrique Olivencia *vs.* El Pueblo de Puerto Rico ante esta corte de distrito y aparece de los autos que la sentencia en el mismo es firme, definitiva y ejecutoria, y aparece también por admisiones y declaraciones del propio demandante en el presente pleito que dicha sentencia fué debidamente ya ejecutada por el márshal obedeciendo orden de esta corte, el día 29 de junio de 1936, en lo que se refiere a las fincas que alega el demandante son de su propiedad. En cuanto se refiere al otro pleito mencionado en la petición civil núm. 15,838 sobre filiación, además de ser ése un pleito separado distinto al presente, la sentencia del Tribunal Supremo es favorable a Enrique Pérez Olivencia, y esta sentencia del Tribunal Supremo crea un estado de derecho que subsiste hasta que la misma sea revocada.' "

Termina la solicitud alegando que el juez de distrito demandado cometió eror de procedimiento al negar el *injunction* preliminar:

"(*a*) Porque el hecho de que la sentencia dictada en el caso No. 18,837 seguido por Enrique Pérez Olivencia vs. El Pueblo de Puerto Rico, esté firme y ejecutoria, no es óbice para que la Corte inferior concediera el *injunction* preliminar, ya que dicha sentencia fué dictada por estipulación de las partes en dicho pleito en el cual no fué

parte ni se le hizo parte a este peticionario y tal estipulación por error judicial grave, há causado daño irreparable al peticionario, despojándosele de su finca;

"(b) Porque si bien el Pueblo de Puerto Rico ha podido estipular allanarse a la demanda de Enrique Pérez Olivencia, y consentir en que se diera posesión de las fincas de la herencia de Pedro Pérez Sales, sólo podía consentir en entregar la posesión de las fincas que El Pueblo de Puerto Rico detentara, pero no las fincas que están en posesión de un tercero, que no es ni ha sido hecho parte en la acción; y si tales procedimientos se permitieran, la combinación de litigantes entre sí, sería un medio para despojar a un tercero, sin el debido proceso de ley, de la posesión de bienes inmuebles en que se encuentre, que es lo que ha sucedido en este caso;

"(c) Porque no es fundamento legal ni de equidad alguno, negar el remedio extraordinario de *injunction* para reparar un grave daño, el hecho de que se haya ejecutado por el Márshal la sentencia dictada en el día de ayer y ejecutada pocas horas después de dictada, cuando precisamente se ejecuta la sentencia sobre las fincas de que está en posesión del peticionario y no las fincas que estaban en poder de El Pueblo de Puerto Rico, demandado en dicho caso, toda vez que el peticionario no era parte en esa acción, y se ha evadido hacerle parte, precisamente para sorprenderle y atropellarle en sus derechos de posesión, no pudiendo éste evitar que el Enrique Olivencia y El Pueblo de Puerto Rico se pusieran de acuerdo sobre dicho pleito, para perjudicarle, no siendo permisible ni en ley ni en equidad que los efectos de un pleito entre esos litigantes perjudiquen al peticionario, despojándole de sus fincas, sin ser demandado, sin darle aviso, informe o notificación alguna y sin un debido proceso de ley ni darle su día en Corte, violándose de una manera violenta su derecho constitucional a ser respetado en sus propiedades y en su posesión pacífica de las mismas;

"(d) Porque el fundamento de la resolución de la Corte inferior, de que el pleito civil núm. 15,838 sobre filiación, es un pleito diferente, es un error fundamental, ya que como se alega en la acción principal en la cual se presentó la solicitud de *injunction* preliminar, Enrique Olivencia, no tiene personalidad ni capacidad para entablar la acción de reivindicación de las propiedades de la herencia de Pedro Pérez Sales, porque dicho pleito de filiación no está terminado, porque el mandato en dicho pleito no ha sido expedido a la Corte inferior y ésta no tiene jurisdicción para permitir que se proceda por Enrique Olivencia a ejercitar derechos hereditarios que aún no le han sido definitivamente adjudicados; habiéndose sorprendido

al Pueblo de Puerto Rico, por medio de sus representantes haciéndoles creer que la sentencia revocatoria de este Tribunal Supremo en dicho pleito de filiación era firme y ejecutoria, cuando no lo es; ni ha sido comunicada dicha sentencia oficialmente al tribunal inferior;

"(e) Porque precisamente este peticionario alegó en su demanda, que la acción entablada por Enrique Olivencia versus El Pueblo de Puerto Rico pretendiendo reivindicar los bienes de la herencia de Pedro Pérez Sales, es prematura, no teniendo el demandante en dicho pleito Enrique Olivencia personalidad bastante para alegar sus derechos como heredero, ya que el pleito de filiación pende aún ante este Tribunal Supremo (*Iturrino* v. *Iturrino*, 24 D.P.R. 78, *Rivera* v. *Cámara*, 17 D.P.R. 528, *Puente* v. *Puente*, 16 D.P.R. 582) y si Enrique Olivencia, de acuerdo con la jurisprudencia citada, no podría solicitar la administración judicial de los bienes de la herencia, porque le falta la personalidad, menos podría demandar al Pueblo de Puerto Rico, para haciendo carambola con éste se despoje al peticionario de parte de los bienes de la herencia, sin haberse ni resuelto definitivamente el pleito de filiación, ni haberse hecho una declaración de herederos por tribunal competente que declarara definitivamente que el dicho Enrique Olivencia era el único y universal heredero de Pedro Pérez Sales, para con esa declaración que es lo que le crea el estado de derecho, reivindicar la herencia de cualesquiera persona que estuviere en posesión de ella por medio del procedimiento legal adecuado.

"(f) Porque mientras no se resuelva definitivamente el pleito de filiación, por este Tribunal Supremo y se expida el mandato a la Corte inferior no existe ningún estado de derecho a favor de Enrique Olivencia y es una teoría peligrosa por parte de la Corte inferior conceder ese estado de derecho, que aun no se ha resuelto y de ese modo ponerle en posesión de la herencia, porque si se resolviere reconsiderar dicha sentencia por este Tribunal Supremo el daño sería irreparable, como ha alegado el peticionario y nunca podría ser compensado de dicho daño, pues como se ha alegado en la demanda principal y en la solicitud de *injunction* preliminar, Enrique Olivencia es un insolvente y no tiene bienes conocidos para responder de dichos daños, posesionándose de la herencia sin garantía alguna ni derecho legal ni equitativo.

"Sexto: Alega el peticionario, que al negarse la Corte inferior a conceder el *injunction* preliminar mediante fianza, y al permitirse por medio de dicha negativa que se haya lanzado al peticionario de las fincas que poseía, se han violado todos sus derechos constitucio-

nales de ser respetado en su ·posesión, no se le ha concedido un debido proceso de ley, se le ha privado de su día en Corte, y se le ha condenado sin ser oído ni facilitársele los medios de defensa y por medio de tales procedimientos violentos, el peticionario se ha visto obligado a interponer rápidamente su acción de nulidad, de declaración de propiedad, de posesión y ha solicitado el único remedio rápido para ser reparado en el daño causado y viéndose desamparado ha tenido que recurrir a este procedimiento de *certiorari,* por la urgencia del caso en bien de la justicia y equidad, siendo tardío y funestamente perjudicial esperar al largo trámite de una apelación contra la negativa de la solicitud de *injunction* preliminar.''

Esta corte ordenó la expedición del auto, fijando la vista para julio 13. Intervino Olivencia. Alegó que el 13 de julio, 1936, fué que se enteró de que en el pleito de filiación se había radicado una moción de reconsideración. Sostiene que ello no obstante la sentencia dictada por esta corte en el mismo era y es firme y ejecutoria; que no dió intervención en el pleito sobre reivindicación al peticionario porque no era parte, ya que el pleito se fundó en que las fincas estaban y están inscritas en el registro a favor de El Pueblo de Puerto Rico, estando también dichas fincas bajo el dominio y posesión de dicho Pueblo; que es cierto que se dictó sentencia en dicho pleito por estipulación y que siendo dicha sentencia firme y ejecutoria se expidió la correspondiente orden de ejecución sobre las propiedades mencionadas en la demanda; que es verdad que se arrestó al peticionario y a su esposa en el día de la ejecución de la sentencia ''pero este arresto fué debido a una denuncia criminal en una acción separada por el márshal de la Corte de Distrito de Mayagüez contra Tomás Pérez Sales y su esposa, porque éstos, que solamente eran meros ocupantes, encargados ilegales o usurpadores de las fincas objeto de dicho pleito sobre reivindicación número 18,837, opusieron serias resistencias al referido márshal y también a miembros del Cuerpo de la Policía Insular que fueron a auxiliar al referido márshal, realizando Tomás Pérez Sales o su esposa los siguientes actos: proferir injurias soeces y calumniosas en alta

voz contra los magistrados de este Tribunal Supremo, en palabras que por respeto a esta honorable Corte Suprema no repetimos ahora, y contra otros ciudadanos y altas autoridades, y también haber abofeteado el rostro de uno de los miembros de la Policía Insular que auxiliaban al márshal, y haber apuntado al márshal con una carabina cargada, y concitar al vecindario allí reunido a resistir al márshal, blandiendo armas blancas y armas de fuego, dando ello lugar a que en el momento de la ejecución la Policía Insular ocupara tres carabinas, con infinidad de cartuchos y proyectiles de calibre suficiente para matar seres humanos, una bayoneta de fusil de guerra, una aguda espada española, un puñal y otras armas, las cuales armas fueron ocupadas por la Policía Insular y depositadas en el cuartel de la Policía Insular en Mayagüez; . . .''.

Alegó además Olivencia que no es cierto que haya allanado propiedad alguna del peticionario ni que se ejerciera violencia sobre él. Sostiene que el juez de distrito no cometió los errores que el peticionario le atribuye, siendo su resolución correcta:

''(a) porque la sentencia en el caso número 18,837, cuya ejecución se pretendía suspender, ya estaba perfectamente ejecutada desde el día anterior a la presentación de la petición de *injunction* en el pleito número 18,915.; (b) porque la ejecución en el pleito número 18,837 sobre reivindicación seguido por Enrique Pérez Olivencia versus El Pueblo de Puerto Rico, es perfectamente legal, porque la sentencia en este pleito sobre reivindicación número 18,837 en el momento de hacerse tal ejecución era perfectamente final y firme, y ejecutoria, y porque los bienes afectados por tal ejecución figuraban bajo el dominio y la posesión de El Pueblo de Puerto Rico; (c) porque las fincas objeto de la ejecución en el referido pleito de reivindicación número 18,837, en el momento de la ejecución, no estaban bajo el dominio ni la posesión legal de un tercero en derecho, sino que estaban bajo el dominio y la posesión del demandado El Pueblo de Puerto Rico, según consta de los autos en el referido pleito;. (d) porque si la mera ocupación ilegal o la condición de encargado ilegal o usurpador de una finca, exigieran que en la ejecución de una sentencia se instituyeran procedimientos contra tal ocupante, encargado

o usurpador, entonces fuera necesario en todos los pleitos de reivindicación interponer una multiplicidad de procedimientos interminables, ya que horas antes de ejecutar tal sentencia podría en esa condición de mero encargado, usurpador u ocupante penetrar cualquier persona en una propiedad que fuera a ejecutarse, haciendo de esta manera imposible ejecutar ningún desahucio ni orden de lanzamiento de propiedades, constituyendo todo eso una burla y una negación de la ley y de la justicia; (e) porque en la petición de *injunction* preliminar en el pleito indicado número 18,915, no se describían ni identificaban concreta y específicamente las fincas que iban a ser afectadas por el pretendido *injunction;* (f) porque son enteramente imaginarios los alegados 'daños irreparables,' ya que las propiedades que pretendía adquirir o retener con tal *injunction* Tomás Pérez Sales no es dinero en efectivo que pueda gastarse, no son obras en construcción que podrían terminarse, ni son bienes fungibles ni nada similar, sino que es piedra y tierra perdurable que solamente podría desaparecer por el hundimiento de la isla de Puerto Rico en el fondo de los mares o por un cataclismo en el globo terrestre; (g) porque en tal pleito número 18,915 el demandado El Pueblo de Puerto Rico era parte indispensable, según todo lo alegado anteriormente, y para radicar la demanda en el pleito número 18,915 contra el demandado El Pueblo de Puerto Rico no medió la necesaria autoridad legislativa ni el previo permiso y fianza que en pleitos contra El Pueblo de Puerto Rico requiere la ley; (h) porque la ejecución en el pleito número 18,837, fué a virtud de una sentencia final y firme, y ejecutoria, independiente totalmente del mencionado pleito de filiación; y (i) porque la sentencia del Tribunal Supremo de Puerto Rico en el susodicho pleito de filiación crea por sí misma un estado de derecho a favor de Enrique Pérez Olivencia, como hijo natural reconocido de Pedro Pérez Sales, y no existe ningún precepto legal vigente en Puerto Rico que disponga que la mera presentación de una moción de reconsideración tiene la consecuencia inmediata de anular o dejar sin efecto una sentencia en un pleito resuelto por el Tribunal Supremo en una acción que no es apelable.''

Alegó además Olivencia que el peticionario fué negligente al no solicitar con su moción de reconsideración una orden mandando paralizar los procedimientos que pudieran afectar los bienes dejados por Pedro Sales; que la resolución de la Corte de Distrito de Mayagüez negando el *injunction* es apelable; que mediante este recurso se atacan colateral-

mente procedimientos de la corte de distrito en diversos pleitos que afectan a Olivencia y éste en el curso ordinario de la ley no ha tenido oportunidad de defenderse dentro de ellos, sin que el peticionario solicitara reconsideración en la propia corte de distrito, ni exista interés público para que esta Corte Suprema intervenga directamente; que las fincas están atrasadas en el pago de sus contribuciones y vienen siendo destruídas en sus árboles y sembrados desde que esta Corte Suprema dictó sentencia favorable a Olivencia en el pleito de filiación, y, por último, que la moción de reconsideración presentada en dicho pleito es frívola y lo ha sido con el propósito de demorar y entorpecer el disfrute de la herencia dejada por Pedro Pérez Sales a su hijo Enrique Pérez Olivencia.

El peticionario presentó un escrito refutando el titulado de contestación por Olivencia que acabamos de extractar. Insiste en que la sentencia de esta Corte en el caso de filiación no es ejecutoria hasta que se remita a la corte de distrito; en que el pleito de reivindicación se inició cuando ya se había retenido el mandato concediéndose permiso para radicar moción de reconsideración, siendo un hecho probado que era el peticionario el que estaba en posesión de la hacienda Mérida y no El Pueblo, y en que la corte de distrito no tenía jurisdicción para dictar la sentencia por estipulación, antes de recibirse el mandato.

Alega además que es falso que él y su esposa profirieran injurias, siendo lo cierto que requirió a un abogado para que interviniera a fin de que el márshal no cometiera una ilegalidad, poniéndose los hechos en conocimiento del juez de distrito, pero el abogado de Olivencia insistió en que el márshal actuara, redactando el dicho márshal las denuncias para poder dar posesión material de la finca mientras el peticionario y su esposa estaban arrestados.

Sostiene que no es culpable de negligencia ya que al día siguiente de ser despojado de su propiedad presentó el pleito de nulidad; que el pleito sobre reivindicación fué resuelto en

29 días; que el día en que la corte de distrito le negó el *injunction* entró en vacaciones y así permanecerá hasta septiembre; que las circunstancias exigieron que acudiera a esta corte; que si no se actúa en seguida perderá la cosecha de café y si se resolviera que en definitiva procedía la reconsideración en el caso de filiación, el peticionario no podrá ser compensado porque Olivencia es insolvente.

Tales son los hechos y las alegaciones que surgen de los autos que revelan algo inusitado contrario al espíritu sereno que debe prevalecer en todos los actos en que intervienen los tribunales de justicia. Llama la atención que los autos del pleito sobre reivindicación nada contengan sobre la ejecución de la sentencia que en los mismos se dictara.

■ De acuerdo con la práctica seguida en esta Corte Suprema, sus sentencias a menos que otra cosa se acuerde expresamente, no se comunican para su ejecución a la corte de distrito de donde el caso procede hasta los diez días de dictadas, término que se ha considerado suficiente para que las partes interesadas puedan hacer en relación con las mismas las gestiones que estimen procedentes.

Si dentro de dicho término o dentro del que se conceda al efecto se presenta una moción de reconsideración, entonces el mandato queda detenido hasta que la moción se resuelve.

En el caso de filiación de que se trata dictó esta corte sentencia en mayo 20, 1936. En mayo 23, 1936, o sea dentro del término de diez días, solicitó la parte demandada— el peticionario Tomás Pérez Sales—que se retuviera el mandato y se le concediera un término de treinta días, para presentar una moción de reconsideración. La corte le concedió hasta el 9 de junio, 1936, y el mandato no fué remitido. El 8 de junio, 1936, la moción de reconsideración fué en efecto archivada y está pendiente de resolución.

El artículo 306 del Código de Enjuiciamiento Civil, tal como rige desde 1906, pág. 144 de la Ley, ed. 1933, dice:

"Art. 306.—Cuando se revocare la sentencia, orden o decreto del tribunal inferior, la corte procederá a pronunciar la sentencia, orden o decreto que debió haber dictado: el tribunal inferior, salvo los casos en que fuere necesario aclarar determinados puntos de hecho, o que la indemnización que hubiere de fijarse o materia sobre la cual hubiere que decretarse, fuere dudosa, pues en cualquiera de estos casos se devolverá la causa para su revisión al tribunal inferior.

"La sentencia pronunciada en apelación por la Corte Suprema se enviará certificada al tribunal inferior para su cumplimiento. Cuando la apelación fuere de una sentencia definitiva, el secretario del tribunal inferior deberá unir el certificado al registro de sentencias y hacer una minuta de la sentencia de la Corte Suprema en el libro o registro de causas, junto al asiento primitivo.

"Cuando la apelación fuere de una orden, el Secretario deberá inscribir íntegramente en los autos del tribunal el certificado recibido, y anotar frente al asiento de la orden apelada una referencia al certificado, consignando en términos breves que dicha orden fué aprobada, anulada o modificada por la Corte Suprema, en apelación."

█ Esta Corte Suprema confirma, revoca o modifica las sentencias de las cortes de distrito de la Isla que ante ella se apelan y en algunos casos dicta la que debió haber dictado la corte inferior. En el momento oportuno se remite el mandato a la corte de distrito respectiva que es la llamada a ejecutar su propia sentencia confirmada o modificada por la Corte Suprema o la que ésta dicte en su lugar resolviendo el caso según, a su juicio, debió resolverse de acuerdo con los hechos y la ley.

█ Cuando en junio 15, 1936, las partes en el pleito sobre reivindicación firmaron la estipulación para que se dictara sentencia y cuando en 29 del propio mes el Juez de Distrito de Mayagüez dictó la sentencia que las partes le pidieron que dictara no sólo no se había comunicado la sentencia en el caso de filiación a la dicha corte de distrito si que se había concedido expresamente al apelado un término para presentar una moción de reconsideración que llevaba consigo la retención del mandato.

Siendo ello así, si bien la sentencia de esta Corte Suprema resolutoria del caso de filiación subsistía como subsiste aún en toda su integridad, su ejecución había quedado virtualmente paralizada por haber asumido la corte de nuevo jurisdicción sobre el caso al autorizar la presentación de la moción de reconsideración.

■ Esto es evidente y esto tenían que conocerlo las partes y el Juez de Distrito de Mayagüez que lo era el de la corte a la que debía remitirse el mandato a los efectos de la ejecución de la sentencia.

Y conociéndolo el juez de distrito, debió negarse al pronunciamiento de la sentencia porque uno de los puntos fundamentales en que dicho pronunciamiento descansaba—el del carácter ejecutorio de la sentencia en el caso de filiación —no existía.

■ En su consecuencia, al presentársele la solicitud de *injunction* demostrativa de que el edificio levantado por la sentencia dictada en el pleito sobre reivindicación caía aparentemente por su base, teniendo como tenía control sobre su propia sentencia dictada el día anterior, la corte debió haber concedido el *injunction* preliminar solicitado.

■ Pero hay más, aun cuando se hubiera tratado de una sentencia válida, fueron tan inusitados los hechos que se le presentaron al juez de distrito como realizados por el márshal al ejecutar la repetida sentencia dictada en el pleito sobre reivindicación, que no debió rehusar intervenir. La corte de distrito tenía y tiene la dirección en bien de la justicia de la conducta de sus funcionarios—artículo 7, núm. 5, del Código de Enjuiciamiento Civil, pág. 4, ed. 1933—y no debió haber permitido que una situación como la que muestran los autos subsistiera.

Se trata de un caso de injusticia notoria. Cabe el recurso de *certiorari*. Está envuelta en cierto modo una cuestión de jurisdicción y los procedimientos seguidos para la ejecución de la sentencia no se ajustan a la ley.

*Procede la anulación de la resolución dictada en el pleito sobre nulidad en junio 30, 1936, declarando sin lugar la petición de injunction preliminar y la devolución de los autos del dicho pleito a la corte de distrito de su origen para que ordene, mediante la prestación de la fianza por parte del peticionario que estime justa, el restablecimiento de las cosas al ser y estado que tenían antes de expedirse el mandamiento de ejecución, hasta nueva orden de la corte. Y tratándose como se trata de un caso urgente, remítase el mandato inmediatamente a la corte de distrito.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.